LENOIR CITY et al.

*v.*

LOUDON COUNTY et al.

435 S.W.2d 824.

(*Knoxville*, September Term, 1968.)

Opinion filed December 20, 1968.

RICHARD STAIR, Knoxville, and Ivo SANDERS, Loudon, for appellants.

DANNEL, WINFREY & McMURRAY, Lenoir City, for appellees.

Mr. Chief Justice Burnett delivered the opinion of the Court.

The Tennessee General Assembly, in 1963, passed the Local Option Revenue Act,[1] codified as T.C.A. 67-3049 through 67-3056.[2] The purpose of LORA was to create a new source of revenue for city and county governments by empowering them to adopt a local sales tax not in excess of one third of the state sales tax rate.

---

[1] The Local Option Revenue Act will subsequently be referred to in this opinion as LORA.

[2] Three sections of the LORA compose the heart of the present case.

"67-3051. *Counties to have priority over cities—Rate determination.* —The levy of the tax by a county shall preclude, to the extent of the county tax, any city or town within such county from levying the tax, but a city or town shall at any time have the right to levy the tax at a rate equal to the difference between the county tax and the maximum rate authorized herein. For cities and towns having territory in more than one county, the term 'cities and towns' is defined as that part of their territory in which they are not precluded by a county tax.

"If an ordinance levying the tax herein authorized is adopted by a city or town prior to adoption of the tax by the county in which the city or town is located, the effectiveness of the ordinance shall be suspended for a period of forty (40) days beyond the date on which it would otherwise be effective under the charter of the city or town. If during this forty-day period, the quarterly county court adopts a resolution to levy the tax at least equal to the rate provided in such ordinance, the effectiveness of the ordinance shall be further suspended until it is determined whether the county tax is to be operative, as provided in sec. 67-3053. If the county tax becomes operative by approval of the voters as provided in sec. 67-3053, the ordinance shall be null and void, but if the county tax does not become operative the ordinance shall become effective on the same date that the county tax is determined to be non-operative, and the election required by sec. 67-3053 shall be held. After initial adoption of the tax by a county or a city or town therein, the tax rate may be increased by a city, town or county under the same procedure. If the tax levied by a quarterly county court is finally determined to be nonoperative, such action shall not preclude subsequent action by the county to adopt the tax at a rate at least equal to the city or town tax rate, in which event the city or

The present case is a dispute between Loudon County and Lenoir City, a municipal corporation within the county, concerning the construction and constitutionality of the LORA.

In January, 1964, according to the grant of authority in the LORA, the Lenoir City Counsel adopted an ordinance calling for a city sales tax referendum. Forty days passed after the enactment of the ordinance without the Loudon County Court calling a county-wide sales tax referendum. Lenoir City voters approved the sales tax March 10, 1964. After levying the sales tax Lenoir City issued two and one-half million dollars of general obligation bonds to finance the construction of a new high school. Lenoir City pledged all its sales tax revenues to the retirement of the bonds.

A resolution to levy a county-wide sales tax in the same amount as Lenoir City subject to a referendum issued from the London County Court October 17, 1967. In accordance with T.C.A. 67-3053 (b) only the voters of Loudon County residing outside the Lenoir City cor-

---

town tax shall cease to be effective; provided, however, that the city or town shall receive from the county tax the same amounts as would have been received from the city or town tax until the end of the current fiscal year of the city or town."

"67-3052. *Distribution of proceeds.*—The tax levied by a county under secs. 67-3049—67-3056 shall be distributed as follows:

"(1) One-half (½) of the proceeds shall be expended and distributed in the same manner as the county property tax for school purposes is expended and distributed.

"(2) The other half (½) shall be distributed as follows:

"(a) Collections for privileges exercised in unincorporated areas, to such fund or funds of the county as the governing body of the county shall direct.

"(b) Collections for privileges exercised in incorporated cities and towns, to the city or town in which the privilege is exercised.

"(c) Provided, however, that a county and city or town may by contract provide for other distribution of the half (½) not allocated to school purposes."

porate limits voted in the referendum, the amount of the tax being the same as that adopted by the city. The resolution carried and the sales tax was levied county-wide.

The statutory method of distribution (Sec. 67-3052, T.C.A.) of the county-wide sales tax revenues will, at the end of the fiscal year, mean a sixteen to twenty thousand dollar reduction in Lenoir City's sales tax revenues. To prevent the expected revenue loss Lenoir City and several city residents brought suit against Loudon County in the Loudon Chancery Court.

The complainants' major contentions were: (1) T.C.A. 67-3051 should be construed to mean that after the passage of a city ordinance calling for a sales tax referendum, the county wherein such city is located must within forty days call for a county-wide referendum or forfeit

---

"67-3053. *Election on resolution.* (a) Any ordinance or resolution of a county or of a city or town levying the tax under authority of secs. 67-3049—67-3056 shall not become operative until approved in an election herein provided in the county, or the city or town, as the case may be. The county election commission shall hold an election thereon, providing options to vote 'FOR' or 'AGAINST' the ordinance or resolution, within sixty (60) days after the receipt of a certified copy of such ordinance or resolution, and a majority vote of those voting in the election shall determine whether the ordinance or resolution is to be operative. If the majority vote is for the ordinance or resolution it shall be deemed to be operative on the date that the county election commission makes its official canvass of the election returns. Provided, however, that no tax shall be collected under any such ordinance or resolution until the first day of a month occurring at least (30) days after the operative date.

(b) If a quarterly county court adopts a resolution to levy the tax at the same rate that is operative in a city or town in the county, the election under this section to determine whether the county tax is to be operative shall be open only to the voters residing outside such city or town. If the county tax is at a higher rate than the rate of the city or town tax, the election shall be also open to the voters of the city or town. Provided further, that should any county or city or town hold an election hereunder, and the ordinance or resolution is rejected, no other election thereon shall be held by such county, city or town for a period of one (1) year from the date of the holding of such prior election."

its authority to thereafter levy a sales tax; (2) T.C.A. 67-3053 (b) deprives city residents of equal protection of the law; (3) the levy of the sale tax by London County unconstitutionally impaired the obligation of Lenoir City to retire its bonded indebtedness; (4) Loudon County was equitably estopped from enacting the county-wide tax, thereby reducing Lenoir City's revenue after the city had enacted the tax and pledged the revenue to retire its bonds.

The Chancellor held that LORA was constitutional but that the enactment of the sales tax by Loudon County without the approval of the Lenoir City voters was an unconstitutional impairment of the city's contract to use the sales tax revenues to retire its bonds. The Chancellor ordered that Lenoir City should continue to receive all the revenues produced by the sales tax within its borders and that the revenues from the tax on sales made within Loudon County but outside Lenoir City should go to the county government. Loudon County appealed.

The opinion of this Court is that although the Chancellor is correct about the constitutionality of the LORA, his holding that the enactment of the sales tax by Loudon County unconstitutionally impaired a contract of Lenoir City is clearly erroneous. Likewise, the method of distribution ordered by the Chancellor is patently contrary to the language of T.C.A. 67-3052.

Four issues now appear in this appeal. Firstly, what is the proper construction of T.C.A. 67-3051? The appellee, Lenoir City, contends that the statute means that the passage of a city ordinance levying a sales tax subject to a referendum perpetually bars the county wherein such city is located from levying a county sales

tax unless within forty days after the enactment of the city ordinance the county court calls for a county-wide sales tax referendum. The appellee's contention is based upon an alleged implication contained in the last sentence of T.C.A. 67-3051:

"If the tax levied [within the forty day suspension period] by a quarterly county court is finally determined to be nonoperative, such action shall not preclude subsequent action by the county to adopt the tax * * *."

The appellees argue that the foregoing sentence implies that after a city ordinance providing for a sales tax referendum has been enacted that a county can preserve its authority to levy a sales tax at some future time only by calling for a referendum within forty days of the passage of the city ordinance.

This Court finds no such implication in the last sentence of T.C.A. 67-3051. The sentence should not be read to mean that the county, when faced with a city ordinance calling for a sales tax referendum, must resolve within forty days to hold a referendum on a county-wide tax or forfeit its authority to do so. Correctly interpreted, the sentence in question merely means that if the county does call a referendum within the forty day suspension period and the referendum fails, the referendum's failure does not preclude imposition of the tax at a future date.

The Legislature did not intend T.C.A. 67-3051 to restrict a county's freedom to determine the appropriate time for levying a county sales tax. The statute empowers both cities and counties to adopt a local sales tax and details the procedure for levying the tax. If a city acts first, its ordinance calling a sales tax referendum is

automatically suspended for forty days to allow the county court an opportunity to call a county-wide referendum. The forty day suspension period is not designed to force the county to act immediately or not at all but to offer the county an opportunity to initiate the tax. If the county court, within the forty days resolves to hold a county-wide referendum and the electorate adopts the sales tax the city's ordinance is rendered null and the tax will be effective county-wide.

The city sales tax referendum will be held pursuant to the ordinance if the county court does not, within forty days of the passage of the city ordinance, call a county-wide sales tax referendum or if a county-wide referendum is called within the forty days but fails. Whether the sales tax becomes effective within a city has no effect on the authority of the county court to subsequently levy a county sales tax subject to a referendum but it does determine who will be eligible to vote in a later referendum on the county-wide sales tax question.

T.C.A. 67-3053 classifies the persons eligible to vote in the sales tax referendum according to the circumstances existing at the time of the referendum. Section (a) of the statute applies to a referendum held by a city or by a county when the referendum is called before passage of a city ordinance calling for a referendum or within the forty day suspension period. All qualified voters residing within the city would be entitled to vote in the city referendum. A referendum called by a county court, either before passage of a city ordinance levying the sales tax subject to a referendum or within the forty day suspension period following such city action, would be open to all voters of the county including residents of the city.

T.C.A. 67-3053 (b) applies only when a county court calls a referendum for a county-wide sales tax to be assessed at the same rate as a sales tax previously adopted by a city within that county. When this situation occurs only voters residing in the county outside the corporate limits of the city having the tax may vote.

■ The second issue is that the constitutionality of T.C.A. 67-3053 (b) which provides that in a referendum on the issue of a county-wide sales tax, held after a city within the county has adopted a sales tax, only voters of the county residing outside the city may vote. The appellees argue that restriction of the franchise to county voters residing outside a city with a sales tax denies the city residents equal protection of the law because tax revenues are diverted from the city without the approval of the city voters. T.C.A. 67-3057 (b) is not a denial of equal protection to city residents. Apparently the Legislature felt that the city voters could not complain since they had already voted for the identical tax at an identical rate on themselves. This provision was apparently enacted to stop short of extending to any city a vested interest in the revenue thus provided.

A city sales tax is a tax not only on city residents but on all persons purchasing goods and services within the city. By enacting a city sales tax the city voters exact a tax from each person who buys within the city even though that person may reside outside the city and have had no opportunity to vote on the tax question. Thus the money of county residents purchasing within the city is taken by means of a sales tax to which he is subjected without his consent. T.C.A. 67-3053 (b) merely gives to the county voters the same power that section (a) of the same statute gives to city voters.

■■■ Finally, the issues of unconstitutional impairment of contract and equitable estoppel may be consolidated for disposition. The Loudon County Court resolution levying a sales tax subject to a referendum of the county voters even though subsequent to Lenoir City's issuance of bonds and pledge of the sales tax revenues was not an impairment of a contract nor was the county court equitably estopped from taking such action. Lenoir City's bonded indebtedness was incurred with knowledge that the city's authority to collect the local sales tax was derived solely from the LORA. According to our interpretation of the statute Loudon County always possessed the statutory right to levy the tax countywide.

We hold that a sales tax is effective throughout Loudon County. The tax revenue must be distributed according to the clear language of T.C.A. 67-3052. The decree below is accordingly reversed and the costs are to be taxed to the city.